Jason M. Drangel (JD 7204)
jdrangel@ipcounselors.com
Ashly E. Sands (AS 7715)
asands@ipcounselors.com
Brieanne Scully (BS 3711)
bscully@ipcounselors.com
Danielle S. Yamali (DY 4228)
dfutterman@ipcounselors.com
EPSTEIN DRANGEL LLP
60 East 42nd Street, Suite 2520
New York, NY 10165
Telephone:     (212) 292-5390
Facsimile:      (212) 292-5391
*Attorneys for Plaintiff*
*Just Play, LLC*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JUST PLAY, LLC,<br><br>*Plaintiff*<br><br>v.<br><br>A ROMANTIC JEWELLERY STORE, BABY TOY'S WORLD, BUBABOX STORE, BUDROVKY STORE, CHENGKE TOY FUNNY STORE, CHSXY OFFICIAL STORE, GALSS ART STORE, HANDMADE JEWELS STORE, HENGYI STORE, HONGZHIDA PACKAGING (SHENZHEN) CO., LTD., HZSHINELING STORE, KAIA STORE, MISSS YOU STORE, MUMU HANDMADE STORE, MUYOO STORE, NANJING C.PATRICK TRADING CO., LTD., NINGBO CENTURY GRAND IMP. & EXP. CO., LTD., NINGBO GYL INTERNATIONAL TRADE CO., LTD., NINGBO HAISHU WENYUE PACKAGE PRODUCT CO., LTD., NINGBO JIE JIE STATIONERY MANUFACTURING CO., LTD., NINGBO JOYRELAX PLASTIC CO., LTD., NINGBO SHINEGIFTS IMPORT & EXPORT CO., LTD., NINGBO SW CO., LTD., NOWHERE STORE, RECORDING MEMORIES STORE, SHOP5796113 STORE, SHOP5799841 STORE, SHOP910342028 STORE, SIAN STORE, SONGDA OFFICIAL | **CIVIL ACTION No. ___**<br><br><br>**COMPLAINT**<br><br>**Jury Trial Requested**<br><br>**FILED UNDER SEAL** |

STORE, SUDDENLY HEARTBEAT STORE, TAFREE OFFICIAL STORE, YIWU FEMTINDO E-COMMERCE CO., LTD., YIWU GIFTS & CRAFTS CUSTOMIZED STORE and ZHEJIANG KARRY PAINTING MATERIALS CO., LTD.,

*Defendants*

**GLOSSARY**

| Term | Definition |
|---|---|
| **Plaintiff or Just Play** | Just Play, LLC |
| **Defendants** | A Romantic Jewellery Store, Baby Toy's World, BUBABOX Store, BUDROVKY Store, Chengke Toy Funny Store, CHSXY Official Store, Galss Art Store, Handmade jewels Store, HENGYI Store, Hongzhida Packaging (Shenzhen) Co., Ltd., HZSHINELING Store, KAIA Store, Misss You Store, MUMU handmade Store, Muyoo Store, Nanjing C.Patrick Trading Co., Ltd., Ningbo Century Grand Imp. & Exp. Co., Ltd., Ningbo GYL International Trade Co., Ltd., Ningbo Haishu Wenyue Package Product Co., Ltd., Ningbo Jie Jie Stationery Manufacturing Co., Ltd., Ningbo Joyrelax Plastic Co., Ltd., Ningbo Shinegifts Import & Export Co., Ltd., Ningbo SW Co., Ltd., Nowhere Store, Recording memories Store, Shop5796113 Store, Shop5799841 Store, Shop910342028 Store, SIAN Store, SONGDA Official Store, Suddenly Heartbeat Store, TAFREE Official Store, Yiwu Femtindo E-Commerce Co., Ltd., Yiwu Gifts & Crafts customized Store and Zhejiang Karry Painting Materials Co., Ltd. |
| **Alibaba** | Alibaba.com, an online marketplace platform that allows manufacturers, wholesalers and other third-party merchants, like Defendants, to advertise, offer for sale, sell, distribute and ship their wholesale and retail products originating from China directly to consumers across the world and specifically to consumers residing in the U.S., including New York |
| **AliExpress** | Aliexpress.com, an online marketplace platform that allows manufacturers, wholesalers and other third-party merchants, like Defendants, to advertise, offer for sale, sell, distribute and ship their wholesale and retail products originating from China directly to consumers across the world and specifically to consumers residing in the U.S., including New York |
| **Epstein Drangel** | Epstein Drangel LLP, counsel for Plaintiff |
| **New York Address** | 244 Madison Ave, Suite 411, New York, New York 10016 |
| **Complaint** | Plaintiff's Complaint filed on February 17, 2021 |
| **Application** | Plaintiff's *Ex Parte* Application for: 1) a temporary restraining order; 2) an order restraining Merchant Storefronts (as defined *infra*) and Defendants' Assets (as defined *infra*) with the Financial Institutions (as defined *infra*); 3) an order to show cause why a preliminary injunction should not issue; 4) an order authorizing bifurcated and alternative service and 5) an order authorizing expedited discovery filed on February 17, 2021 |
| **Geller Dec.** | Declaration of Larry Geller in Support of Plaintiff's Application |

| | |
|---|---|
| **Drangel Dec.** | Declaration of Jason M. Drangel in Support of Plaintiff's Application |
| **Shrinky Dinks Products** | Toy and activity set consisting of special plastic sheets that when heated in an oven, shrink to small hard pieces without altering their color or shape |
| **Shrinky Dinks Mark** | U.S. Trademark Registration No.: 1,042,382 for "SHRINKY DINKS" for goods in Class 28 |
| **Counterfeit Products** | Products bearing or used in connection with the Shrinky Dinks Mark, and/or products in packaging and/or containing labels bearing the Shrinky Dinks Mark, and/or bearing or used in connection with marks that are confusingly similar to the Shrinky Dinks Mark and/or products that are identical or confusingly similar to the Shrinky Dinks Products |
| **Infringing Listings** | Defendants' listings for Counterfeit Products |
| **User Accounts** | Any and all websites and any and all accounts with online marketplace platforms such as Alibaba, AliExpress, as well as any and all as yet undiscovered accounts with additional online marketplace platforms held by or associated with Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them |
| **Merchant Storefronts** | Any and all User Accounts through which Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them operate storefronts to manufacture, import, export, advertise, market, promote, distribute, display, offer for sale, sell and/or otherwise deal in Counterfeit Products, which are held by or associated with Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them |
| **Defendants' Assets** | Any and all money, securities or other property or assets of Defendants (whether said assets are located in the U.S. or abroad) |
| **Defendants' Financial Accounts** | Any and all financial accounts associated with or utilized by any Defendants or any Defendants' User Accounts or Merchant Storefront(s) (whether said account is located in the U.S. or abroad) |
| **Financial Institutions** | Any banks, financial institutions, credit card companies and payment processing agencies, such as PayPal Inc. ("PayPal"), Payoneer Inc. ("Payoneer"), the Alibaba Group d/b/a Alibaba.com payment services (e.g., Alipay.com Co., Ltd., Ant Financial Services Group), PingPong Global Solutions, Inc. ("PingPong") and other companies or agencies that engage in the processing or transfer of money and/or real or personal property of Defendants |
| **Third Party Service Providers** | Online marketplace platforms, including, without limitation, those owned and operated, directly or indirectly by Alibaba, |

| | AliExpress, as well as any and all as yet undiscovered online marketplace platforms and/or entities through which Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them manufacture, import, export, advertise, market, promote, distribute, offer for sale, sell and/or otherwise deal in Counterfeit Products which are hereinafter identified as a result of any order entered in this action, or otherwise |
|---|---|

Plaintiff, a limited liability company organized and existing under the laws of the State of Florida, by and through its undersigned counsel, alleges as follows:[1]

## NATURE OF THE ACTION

1.      This action involves claims for trademark infringement of Plaintiff's federally registered trademark in violation of § 32 of the Federal Trademark (Lanham) Act, 15 U.S.C. §§ 1051 *et seq*.; counterfeiting of Plaintiff's federally registered trademark in violation of 15 U.S.C. §§ 1114(1)(a)-(b), 1116(d) and 1117(b)-(c); false designation of origin, passing off and unfair competition in violation of Section 43(a) of the Trademark Act of 1946, as amended (15 U.S.C. §1125(a)); and related state and common law claims, arising from the infringement of the Shrinky Dinks Mark, including, without limitation, by manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or selling unlicensed, counterfeit and infringing versions of Plaintiff's Shrinky Dinks Products by Defendants.

## JURISDICTION AND VENUE

2.      This Court has federal subject matter jurisdiction over the claims asserted in this Action pursuant to 28 U.S.C. §§ 1331 and 1338(a), as well as pursuant to 15 U.S.C. § 1121 as an action arising out of violations of the Lanham Act, 15 U.S.C. §§ 1051 *et seq*.; pursuant to 28 U.S.C. §1338(b) as an action arising out of claims for false designation of origin and unfair competition and pursuant to 28 U.S.C. § 1332, as there is diversity between the parties and the matter in controversy exceeds, exclusive of interests and costs, the sum of seventy-five thousand dollars.  This Court has supplemental jurisdiction pursuant to 28 U.S.C. §§1367(a), as the claims asserted thereunder are so closely related to the federal claims brought in this Action as to form part of the same case or

---

[1] Where a defined term is referenced herein but not defined, it should be understood as it is defined in the Glossary.

controversy.

3.      Personal jurisdiction exists over Defendants in New York pursuant to N.Y.C.P.L.R. § 302(a)(1) and N.Y.C.P.L.R. § 302(a)(3), or in the alternative, Federal Rule of Civil Procedure 4(k), because, upon information and belief, Defendants regularly conduct, transact and/or solicit business in New York, and/or derive substantial revenue from their business transactions in New York and/or otherwise avail themselves of the privileges and protections of the laws of the State of New York such that this Court's assertion of jurisdiction over Defendants does not offend traditional notions of fair play and due process, and/or Defendants' illegal counterfeiting and infringing actions caused injury to Plaintiff in New York such that Defendants should reasonably expect such actions to have consequences in New York, for example:

a.      Upon information and belief, Defendants were and/or are systematically directing and/or targeting their business activities at consumers in the U.S., including New York, through accounts with online marketplace platforms such as Alibaba and/or AliExpress as well as any and all as yet undiscovered User Accounts, through which consumers in the U.S., including New York, can view one or more of Defendants' Merchant Storefronts that each Defendant operates, uses to communicate with Defendants regarding their listings for Counterfeit Products and to place orders for, receive invoices for and purchase Counterfeit Products for delivery in the U.S., including New York, as a means for establishing regular business with the U.S., including New York.

b.      Upon information and belief, Defendants are sophisticated sellers, each operating one or more commercial businesses through their respective User Accounts, using their Merchant Storefronts to manufacture, import, export, advertise, market, promote, distribute, offer for sale and/or otherwise deal in products, including the Counterfeit Products

2

at significantly below-market prices to consumers worldwide, including to those in the U.S., and specifically New York.

       c.    Upon information and belief, all Defendants accept payment in U.S. Dollars and offer shipping to the U.S., including to New York and specifically to the New York Address.

       d.    Upon information and belief, Defendants have transacted business with consumers located in the U.S., including New York, for the sale and shipment of Counterfeit Products.

       e.    Upon information and belief, Defendants are aware of Plaintiff, its Shrinky Dinks Products and Shrinky Dinks Mark, and are aware that their illegal counterfeiting and infringing actions alleged herein are likely to cause injury to Plaintiff in the U.S. and specifically, in New York.

4.    Venue is proper, *inter alia*, pursuant to 28 U.S.C. § 1391 because, upon information and belief, Defendants conduct, transact and/or solicit business in New York.

## **THE PARTIES**

5.    Plaintiff Just Play, LLC is a limited liability company organized and existing under the laws of the State of Florida, with its headquarters located at 4850 T-Rex Ave Suite 100, Boca Raton, FL, 33431.

6.    Upon information and belief, Defendants are merchants on the Alibaba and/or AliExpress online marketplace platforms, through which Defendants offer for sale and/or sell Counterfeit Products, with a principal place of business at the addresses identified, if any, in the printouts of screenshots of Defendants' Merchant Storefronts in **Exhibit C**.

## GENERAL ALLEGATIONS

### Plaintiff and Its Well-Known Shrinky Dinks Products

7.    Just Play is a leader in children's consumer goods that manufactures and distributes toys for children of all ages under their own popular brands as well as in partnership with prominent children's entertainment brands including Disney Consumer Products, Marvel Entertainment, Twentieth Century Fox and Nickelodeon.

8.    Just Play distributes its products to major mass retailers in the United States and around the world.

9.    Just Play recently acquired the intellectual property assets for the popular Shrinky Dinks children's toy and activity set, consisting of special plastic sheets that when heated in an oven, shrink to small hard pieces without altering their color or shape.  Once heated, the Shrinky Dinks can then be used in a variety of projects such as useful and meaningful keepsakes, jewelry, ID tags, pins and the like. Sample Shrinky Dinks Products are attached hereto as **Exhibit A** and incorporated herein by reference.

10.   Shrinky Dinks were created in 1973 and have been a favorite household toy/activity set for children and adults since its soaring popularity in the eighties. TIME Magazine recognized Shrinky Dinks as one of the Top-All Time 100 Greatest Toys.[2]

11.   Shrinky Dinks are sold by major U.S. retailers, such as Jo-Ann Fabric and Craft, Michael's Stores and Amazon.

12.   Shrinky Dinks typically retail for between $5.99 - $13.99.

13.   Just Play recently acquired all right, title and interest to U.S. Trademark Registration

---

[2] *See All-TIME 100 Greatest Toys,* TIME,
http://content.time.com/time/specials/packages/completelist/0,29569,2049243,00.html.

No. 1,042,382 through an assignment from Shrinky Dinks Holding, LLC.[3]

14.     Through this recent acquisition, Just Play has gained significant common law trademark and other rights in its Shrinky Dinks Mark and Shrinky Dinks Products through its predecessors' use, advertising and promotion.

15.     For example, Just Play now owns the following U.S. Trademark Registration No.: 1,042,382 for "SHRINKY DINKS" for goods in Class 28. A true and correct copy of the registration for the Shrinky Dinks Mark is attached hereto as **Exhibit B** and incorporated herein by reference.

16.     The Shrinky Dinks Mark is currently in use in commerce in connection with Shrinky Dinks Products.  The Shrinky Dinks Mark was first used in commerce on or before the date of first use as reflected in the registration attached hereto as **Exhibit B**.

17.     The success of the Shrinky Dinks Mark is due in part to Just Play and its predecessor's marketing and promotional efforts.  These efforts currently include advertising and promotion through social media, Just Play's website (available at https://https://justplayproducts.com/) and other advertising, among other efforts domestically and abroad, including in New York.

18.     Just Play and its predecessor's success is also due to its use of the highest quality materials and processes in making the Shrinky Dinks Products.

19.     Additionally, Just Play and its predecssor owes a substantial amount of the success of the Shrinky Dinks Products to their consumers and word-of-mouth buzz that their consumers have generated.

20.     Just Play and its predecessor's efforts, the quality of the Shrinky Dinks Products and the word-of-mouth buzz generated by their consumers have made the Shrinky Dinks Mark and Shrinky Dinks Products prominently placed in the minds of the public. Members of the public have

---

[3] A true and correct copy of the recordation of trademark assignment is included in **Exhibit B**.

become familiar with the Shrinky Dinks Mark and Shrinky Dinks Products and have come to associate them exclusively with Just Play. Just Play has acquired a valuable reputation and goodwill among the public as a result of such associations.

21.    Just Play and its predecessor have gone to great lengths to protect their interests to the Shrinky Dinks Mark and Shrinky Dinks Products. No one other than Just Play and its authorized licensees and distributors are authorized to manufacture, import, export, advertise, offer for sale or sell any goods utilizing the Shrinky Dinks Mark, or use the Shrinky Dinks Mark in connection with goods or services or otherwise, without the express permission of Just Play.

### Alibaba, AliExpress and Defendants' User Accounts

22.    Alibaba and AliExpress are online marketplace and e-commerce platforms which allow manufacturers, wholesalers and other third-party merchants, like Defendants, to advertise, offer for sale, sell and ship their wholesale and retail products originating from China to consumers worldwide and specifically to consumers residing in the U.S., including New York.

23.    As some of the leaders of China's e-commerce and digital retail market, Alibaba and AliExpress have generated hundreds of billions in sales worldwide.[4] International markets, including the U.S., make up a significant percentage of sales made on Alibaba and AliExpress. For example, in 2019, revenue from international retail sales grew by 25% on AliExpress to $342 million and 15% on Alibaba to $841 million.[5] The press reported that the growth in sales on AliExpress resulted from an increase in the number of buyers, particularly from the U.S., as well as other larges countries like Russia and Brazil.[6] Additionally, according to *Business Insider*,

---

[4]*See* Kenneth Rapoza, *Jack Ma's Alibaba Promises Huge Sales Boom, $910 Billion In Merchandise Volume By 2020*, FORBES (Jun. 15, 2016), http://www.forbes.com/sites/kenrapoza/2016/06/15/jack-ma-foretells-huge-sales-boom-for-chinese-e-commerce-giant-alibaba/#78d364486b52.
[5] *See* Frank Tong, *Alibaba's annual web sales easily surpass U.S. e-retail sales,* DIGITALCOMMERCE360.COM (May 5, 2016), https://www.internetretailer.com/2016/05/05/alibabas-annual-web-sales-easily-surpass-us-e-retail-sales.
[6] *See* Frank Tong, *An Alibaba site sells $4.5 billion in one year to consumers outside of China,* DIGITALCOMMERCE360.COM

excluding China, the U.S. was among the top five countries with packages coming from Alibaba's marketplaces on the company's "Singles' Day" (often compared to the U.S.'s Cyber Monday) in 2015, which resulted in over $14 billion in sales in one day.[7]

24.     As recently addressed in the *Wall Street Journal*, *Fortune* and the *New York Times* and other reputable publications,[8] several federal lawsuits have been filed against China-based sellers on Alibaba and AliExpress (along with these same online marketplace platforms themselves and stand-alone websites)[9] in light of the astronomical number of counterfeit and infringing products are offered for sale and sold at a rampant rate.[10]

25.     Defendants are individuals and/or businesses, who, upon information and belief, are located in China but conduct business in the U.S. and other countries by means of their User Accounts and Merchant Storefronts on Alibaba and/or AliExpress as well as potential yet undiscovered additional online marketplace platforms.

26.     Through their Merchant Storefronts, Defendants offer for sale and/or sell consumer

---

(Sept. 11, 2014), https://www.internetretailer.com/2014/09/11/alibaba-site-sells-45-billion-one-year-consumers-outs.

[7] *See* Bob Bryan, *Alibaba just proved it's more than just some Chinese company*, BUSINESS INSIDER (Nov. 15, 2015), http://www.businessinsider.com/alibaba-international-expansion-2015-11.

[8] *See* Kathy Chu, *Alibaba Vows Crackdown on Fakes Amid Trade Group Controversy*, WALL STREET JOURNAL (May 13, 2016), http://www.wsj.com/articles/alibaba-vows-crackdown-on-fakes-amid-trade-group-controversy-1463127605?; Scott Cendrowski, *Chinese Regulator Again Calls Out Alibaba for Counterfeit Goods*, FORTUNE (Aug. 10, 2016), http://fortune.com/2016/08/11/alibaba-counterfeit-goods-regulator/; *see also* Kathy Chu, *Alibaba Suspends From Anticounterfeiting Group*, WALL STREET JOURNAL (May 13, 2016), http://www.wsj.com/articles/alibaba-suspended-from-anticounterfeiting-group-1463170527?tesla=y; Michael Schuman, *A Small Table Maker Takes On Alibaba's Flood of Fakes*, N.Y. TIMES (Mar. 18, 2017), https://www.nytimes.com/2017/03/18/business/alibaba-fake-merchandise-e-commerce.html.

[9] *See* Kathy Chu, *Alibaba Vows Crackdown on Fakes Amid Trade Group Controversy*, WALL STREET JOURNAL (May 13, 2016), http://www.wsj.com/articles/alibaba-vows-crackdown-on-fakes-amid-trade-group-controversy-1463127605?; Scott Cendrowski, *Chinese Regulator Again Calls Out Alibaba for Counterfeit Goods*, FORTUNE (Aug. 10, 2016), http://fortune.com/2016/08/11/alibaba-counterfeit-goods-regulator/; *see also* Kathy Chu, *Alibaba Suspends From Anticounterfeiting Group*, WALL STREET JOURNAL (May 13, 2016), http://www.wsj.com/articles/alibaba-suspended-from-anticounterfeiting-group-1463170527?tesla=y.

[10] *See* Kathy Chu, *Luxury brands get tougher with counterfeiters – and Alibaba*, MARKETWATCH (Aug. 16, 2016), http://www.marketwatch.com/story/luxury-brands-get-tough-with-counterfeiters-2016-08-16-91031611; Gilian Wong, *Alibaba Sued Over Alleged Counterfeits*, WALL STREET JOURNAL (May 17, 2015), http://www.wsj.com/articles/alibaba-sued-over-alleged-counterfeits-1431877734; and Scott Cendrowski, *There's no end in sight for Alibaba's counterfeit problem*, FORTUNE (May 18, 2015), http://fortune.com/2015/05/18/theres-no-end-in-sight-for-alibabas-counterfeit-problem/.

products, including Counterfeit Products, and target and ship such products to customers located in the U.S., including New York, and throughout the world.

27.    Defendants' Merchant Storefronts share unique identifiers, such as design elements along with similarities in price, description of the goods offered and of the Counterfeit Products themselves offered for sale.

28.    Defendants are in constant communication with each other and regularly participate in online chatroom discussions involving illegal counterfeiting activities, pending litigation and potential new lawsuits.

**Defendants' Wrongful and Infringing Conduct**

29.    Particularly in light of Plaintiff's success with its Shrinky Dinks Products, as well as the reputation they have gained, Plaintiff and its Shrinky Dinks Products have become targets for unscrupulous individuals and entities who wish to capitalize on the goodwill, reputation and fame that Plaintiff has amassed in its Shrinky Dinks Products and Shrinky Dinks Mark and Plaintiff investigates and enforces against such activities.

30.    Through Epstein Drangel's investigative and enforcement efforts, Plaintiff learned of Defendants' actions which vary and include, but are not limited to: manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or selling Counterfeit Products to U.S. consumers, including those located in the state of New York, through Defendants' User Accounts and Merchant Storefronts.  Printouts of Infringing Listings from Defendants' User Accounts and Merchant Storefronts are included in **Exhibit C** attached hereto and incorporated herein by reference.

31.    Defendants are not, and have never been, authorized by Plaintiff or any of its authorized agents, authorized licensees or authorized distributors to copy, manufacture, import,

export, advertise, distribute, offer for sale or sell the Shrinky Dinks Products or to use the Shrinky Dinks Mark, or any marks that are confusingly similar to the Shrinky Dinks Mark.

32.     Defendants' Counterfeit Products are nearly indistinguishable from Plaintiff's Shrinky Dinks Products, only with minor variations that no ordinary consumer would recognize.

33.     During its investigation, Epstein Drangel identified Defendants as offering for sale and/or selling Counterfeit Products and specified a shipping address located at the New York Address and verified that each Defendant provides shipping to the New York Address. Printouts of the checkout pages for the Counterfeit Products and pages from Defendants' Merchant Storefronts reflecting that the Defendants ship the Counterfeit Products to the New York Address are included in **Exhibit C**.

34.     Epstein Drangel confirmed that each Defendant is still currently offering for sale and/or selling Counterfeit Products through their respective User Accounts and/or Merchant Storefronts, accepting payment for such Counterfeit Products in U.S. Dollars and that each Defendant provides shipping and/or has actually shipped Counterfeit Products to the U.S., including to customers located in New York.  Plaintiff's findings are supported by Defendants' Infringing Listings and/or the checkout pages for Counterfeit Products, which are included in **Exhibit C**.

35.     For example, below on the left is an image of one of Plaintiff's Shrinky Dinks Products. Depicted further below is a listing for Defendant Ningbo Shinegifts Import & Export Co., Ltd's Counterfeit Product ("Ningbo Shinegifts Import & Export Co., Ltd Infringing Listing" and "Ningbo Shinegifts Import & Export Co., Ltd Counterfeit Product," respectively). The Ningbo Shinegifts Import & Export Co., Ltd Infringing Listing appears on Defendant's Merchant Storefront, https://shinegifts.en.alibaba.com/, and offers the Ningbo Shinegifts Import & Export Co., Ltd Counterfeit Product for $0.45-$0.50 per item, using, featuring and/or incorporating the

Shrinky Dinks Mark and/or confusingly similar marks in the descriptions and/or product images in the body of the listing.  Further, the Ningbo Shinegifts Import & Export Co., Ltd Counterfeit Product is virtually identical to one of Plaintiff's Shrinky Dinks Products and features and/or incorporates the Shrinky Dinks Mark.  There is no question that the Ningbo Shinegifts Import & Export Co., Ltd Counterfeit Product is designed to confuse and mislead consumers into believing that they are purchasing one of Plaintiff's Shrinky Dinks Products or that the Ningbo Shinegifts Import & Export Co., Ltd Counterfeit Product is otherwise approved by or sourced from Plaintiff, thereby trading off of the goodwill and reputation of Plaintiff by engaging in the unauthorized use of the Shrinky Dinks Mark:

<table>
<tr><td><strong><u>Shrinky Dinks Product</u></strong></td><td><strong><u>Defendant's Counterfeit Product</u></strong></td></tr>
<tr><td></td><td></td></tr>
</table>

36.     By way of another example, below on the left is an image of one of Plaintiff's Shrinky Dinks Products. Depicted further below is a listing for Defendant Chengke Toy Funny Store's Counterfeit Product ("Chengke Toy Funny Product Store Infringing Listing" and "Chengke Toy Funny Product Store Counterfeit Product," respectively).  The Chengke Toy Funny Product Store Infringing Listing appears on Defendant Chengke Toy Funny Product Store's Merchant Storefront,

10

https://www.aliexpress.com/store/4242048, and offers the Chengke Toy Funny Product Store Counterfeit Product for $5.70-$14.96 per item, using, featuring and/or incorporating the Shrinky Dinks Mark and/or confusingly similar marks in the descriptions and/or product images in the body of the listing. Further, the Chengke Toy Funny Product Store Counterfeit Product is virtually identical to one of Plaintiff's Shrinky Dinks Products and features and/or incorporates the Shrinky Dinks Mark. There is no question that the Chengke Toy Funny Product Store Counterfeit Product is designed to confuse and mislead consumers into believing that they are purchasing one of Plaintiff's Shrinky Dinks Products or that the Chengke Toy Funny Product Store Counterfeit Product is otherwise approved by or sourced from Plaintiff, thereby trading off of the goodwill and reputation of Plaintiff by engaging in the unauthorized use of the Shrinky Dinks Mark:

| **Shrinky Dinks Product** | **Defendant's Counterfeit Product** |
|:---:|:---:|
|  |  |

37. As another example, below on the left is an image of one of Plaintiff's Shrinky Dinks Products. Depicted further below is a listing for Defendant MUMU handmade Product Store's Counterfeit Product ("MUMU handmade Infringing Listing" and "MUMU handmade Product Store Counterfeit Product," respectively). The MUMU handmade Product Store Infringing Listing

appears on Defendant MUMU handmade Product Store's Merchant Storefront, https://www.aliexpress.com/store/5779214, and offers the MUMU handmade Product Store Counterfeit Product for $0.86 per item, using, featuring and/or incorporating the Shrinky Dinks Mark and/or confusingly similar marks in the descriptions and/or product images in the body of the listing. Further, the MUMU handmade Product Store Counterfeit Product is virtually identical to one of Plaintiff's Shrinky Dinks Products and features and/or incorporates the Shrinky Dinks Mark. There is no question that the MUMU handmade Product Store Counterfeit Product is designed to confuse and mislead consumers into believing that they are purchasing one of Plaintiff's Shrinky Dinks Products or that the MUMU handmade Product Store Counterfeit Product is otherwise approved by or sourced from Plaintiff, thereby trading off of the goodwill and reputation of Plaintiff by engaging in the unauthorized use of the Shrinky Dinks Mark:

<table>
<tr><td><u>**Shrinky Dinks Product**</u></td><td><u>**Defendant's Counterfeit Product**</u></td></tr>
<tr><td></td><td></td></tr>
</table>

38.     By these dealings in Counterfeit Products (including, without limitation, copying, manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or selling Counterfeit Products), Defendants violated Plaintiff's exclusive rights in the Shrinky Dinks Mark, and have used marks that are confusingly similar to, identical to and/or constitute counterfeiting and/or infringement of the Shrinky Dinks Mark in order to confuse

consumers into believing that such Counterfeit Products are the Shrinky Dinks Products and aid in the promotion and sales of their Counterfeit Products.  Defendants' conduct began long after Plaintiff's adoption and use of the Shrinky Dinks Mark, after Plaintiff acquired a federal registration in the Shrinky Dinks Mark, as alleged above, and after Plaintiff's Shrinky Dinks Products and Shrinky Dinks Mark became well-known to the purchasing public.

39.     Prior to and contemporaneous with their counterfeiting and infringing actions alleged herein, Defendants had knowledge of Plaintiff's ownership of the Shrinky Dinks Mark, of the fame and incalculable goodwill associated therewith and of the popularity and success of the Shrinky Dinks Products, and in bad faith adopted the Shrinky Dinks Mark.

40.     Defendants have been engaging in the illegal counterfeiting and infringing actions, as alleged herein, knowingly and intentionally, or with reckless disregard or willful blindness to Plaintiff's rights, or in bad faith, for the purpose of trading on the goodwill and reputation of Plaintiff, the Shrinky Dinks Mark and Shrinky Dinks Products.

41.     Defendants' dealings in Counterfeit Products, as alleged herein, has caused, and will continue to cause confusion, mistake, economic loss, and has, and will continue to deceive consumers, the public and the trade with respect to the source or origin of Defendants' Counterfeit Products, thereby causing consumers to erroneously believe that such Counterfeit Products are licensed by or otherwise associated with Plaintiff, thereby damaging Plaintiff.

42.     By engaging in these actions, Defendants have, jointly and severally, among other things, willfully and in bad faith committed the following, all of which have and will continue to cause irreparable harm to Plaintiff: infringed and counterfeited the Shrinky Dinks Mark, committed unfair competition and unfairly and unjustly profited from such activities at Plaintiff's expense.

43.     Unless enjoined, Defendants will continue to cause irreparable harm to Plaintiff.

**CAUSES OF ACTION**

**FIRST CAUSE OF ACTION**
**(Trademark Counterfeiting)**
**[15 U.S.C. § 1114(1)(b)/Lanham Act § 32; 15 U.S.C. § 1116(d)/Lanham Act § 34; 15 U.S.C. § 1117(b)-(c)/Lanham Act § 35]**

44.     Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

45.     Plaintiff is the exclusive owner of all right and title to the Shrinky Dinks Mark.

46.     Plaintiff and its predecessor in interest have continuously used the Shrinky Dinks Mark in interstate commerce since on or before the date of first use as reflected in the registration certificate attached hereto as **Exhibit B**.

47.     Without Plaintiff's authorization or consent, with knowledge of Plaintiff's well-known and prior rights in its Shrinky Dinks Mark and with knowledge that Defendants' Counterfeit Products bear counterfeit marks, Defendants intentionally reproduced, copied and/or colorably imitated the Shrinky Dinks Mark and/or used spurious designations that are identical with, or indistinguishable from, the Shrinky Dinks Mark on or in connection with the manufacturing, import, export, advertising, marketing, promotion, distribution, display, offering for sale and/or sale of Counterfeit Products.

48.     Defendants have manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale and/or sold their Counterfeit Products to the purchasing public in direct competition with Plaintiff, in or affecting interstate commerce, and/or have acted with reckless disregard of Plaintiff's rights in and to the Shrinky Dinks Mark through their participation in such activities.

49.     Defendants have applied their reproductions, counterfeits, copies and colorable imitations of the Shrinky Dinks Mark to packaging, point-of-purchase materials, promotions and/or

advertisements intended to be used in commerce upon, or in connection with the manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or selling of Defendants' Counterfeit Products, which is likely to cause confusion, mistake, and deception among the general purchasing public as to the origin of the Counterfeit Products, and is likely to deceive consumers, the public and the trade into believing that the Counterfeit Products sold by Defendants originate from, are associated with or are otherwise authorized by Plaintiff, thereby making substantial profits and gains to which they are not entitled in law or equity.

50.     Defendants' unauthorized use of the Shrinky Dinks Mark on or in connection with the Counterfeit Products was done with notice and full knowledge that such use was not authorized or licensed by Plaintiff or its authorized agents and with deliberate intent to unfairly benefit from the incalculable goodwill inherent in the Shrinky Dinks Mark.

51.     Defendants' actions constitute willful counterfeiting of the Shrinky Dinks Mark in violation of 15 U.S.C. §§ 1114(1)(a)-(b), 1116(d) and 1117(b)-(c).

52.     As a direct and proximate result of Defendants' illegal actions alleged herein, Defendants have caused substantial monetary loss and irreparable injury and damage to Plaintiff, its business, its reputation and its valuable rights in and to the Shrinky Dinks Mark and the goodwill associated therewith, in an amount as yet unknown, but to be determined at trial, for which Plaintiff has no adequate remedy at law, and unless immediately enjoined, Defendants will continue to cause such substantial and irreparable injury, loss and damage to Plaintiff and its valuable Shrinky Dinks Mark.

53.     Based on Defendants' actions as alleged herein, Plaintiff is entitled to injunctive relief, damages for the irreparable harm that Plaintiff has sustained, and will sustain, as a result of Defendants' unlawful and infringing actions, as alleged herein, and all gains, profits and advantages

obtained by Defendants as a result thereof, enhanced discretionary damages, treble damages and/or statutory damages of up to $2,000,000 per counterfeit mark per type of goods sold, offered for sale or distributed and reasonable attorneys' fees and costs.

## SECOND CAUSE OF ACTION
### (Infringement of Registered Trademark)
### [115 U.S.C. § 1114/Lanham Act § 32(a)]

54.     Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

55.     Plaintiff and its predecessor in interest have continuously used the Shrinky Dinks Mark in interstate commerce since on or before the date of first use as reflected in the registration certificate attached hereto as **Exhibit B**.

56.     Plaintiff, as owner of all right, title and interest in and to the Shrinky Dinks Mark, has standing to maintain an action for trademark infringement under 15 U.S.C. § 1114.

57.     Defendants were, at the time they engaged in their actions as alleged herein, actually aware that Plaintiff is the owner of the federal trademark registration for the Shrinky Dinks Mark.

58.     Defendants did not seek and thus inherently failed to obtain consent or authorization from Plaintiff, as the registered trademark owner of the Shrinky Dinks Mark, to deal in and commercially manufacture, import, export, advertise, market, promote, distribute, display, retail, offer for sale and/or sell the Shrinky Dinks Products and/or related products bearing the Shrinky Dinks Mark into the stream of commerce.

59.     Defendants knowingly and intentionally manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale and/or sold Counterfeit Products, bearing and/or utilizing marks that are reproductions, counterfeits, copies and/or colorable imitations of the Shrinky Dinks Mark and/or which are identical or confusingly similar

to the Shrinky Dinks Mark.

60.     Defendants knowingly and intentionally reproduced, copied and colorably imitated the Shrinky Dinks Mark and applied such reproductions, copies or colorable imitations to packaging, wrappers, receptacles, online listings and/or advertisements used in commerce upon, or in connection with the manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or sale of Defendants' Counterfeit Products.

61.     Defendants were, at the time they engaged in their illegal and infringing actions as alleged herein, actually aware that Plaintiff is the owner of all rights in and to the Shrinky Dinks Mark.

62.     Defendants' egregious and intentional use of the Shrinky Dinks Mark in commerce on or in connection with Defendants' Counterfeit Products has caused, and is likely to continue to cause, actual confusion and mistake, and has deceived, and is likely to continue to deceive, the general purchasing public as to the source or origin of the Counterfeit Products, and is likely to deceive the public into believing that Defendants' Counterfeit Products are Plaintiff's Shrinky Dinks Products or are otherwise associated with, or authorized by, Plaintiff.

63.     Defendants' actions have been deliberate and committed with knowledge of Plaintiff's rights and goodwill in the Shrinky Dinks Mark, as well as with bad faith and the intent to cause confusion, mistake and deception.

64.     Defendants' continued, knowing, and intentional use of the Shrinky Dinks Mark without Plaintiff's consent or authorization constitutes intentional infringement of Plaintiff's federally registered Shrinky Dinks Mark in violation of §32 of the Lanham Act, 15 U.S.C. § 1114.

65.     As a direct and proximate result of Defendants' illegal and infringing actions as alleged herein, Plaintiff has suffered substantial monetary loss and irreparable injury, loss and

damage to its business and its valuable rights in and to the Shrinky Dinks Mark and the goodwill associated therewith in an amount as yet unknown, but to be determined at trial, for which Plaintiff has no adequate remedy at law, and unless immediately enjoined, Defendants will continue to cause such substantial and irreparable injury, loss and damage to Plaintiff and the valuable Shrinky Dinks Mark.

Based on Defendants' actions as alleged herein, Plaintiff is entitled to injunctive relief, damages for the irreparable harm that Plaintiff has sustained, and will sustain, as a result of Defendants' unlawful and infringing actions as alleged herein, and all gains, profits and advantages obtained by Defendants as a result thereof, enhanced discretionary damages, as well as other remedies provided by 15 U.S.C. §§ 1116, 1117, and 1118, and reasonable attorneys' fees and costs.

### THIRD CAUSE OF ACTION
### (False Designation of Origin, Passing Off & Unfair Competition)
### [15 U.S.C. § 1125(a)/Lanham Act § 43(a)]

66. Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

67. Plaintiff, as the owner of all right, title and interest in and to the Shrinky Dinks Mark has standing to maintain an action for false designation of origin and unfair competition under the Federal Trademark Statute, Lanham Act § 43(a) (15 U.S.C. § 1125).

68. The Shrinky Dinks Mark is inherently distinctive and/or has acquired distinctiveness.

69. Defendants knowingly and willfully used in commerce products and/or packaging designs that are identical or confusingly similar to, and constitute reproductions of the Shrinky Dinks Mark and affixed, applied and used false designations of origin and false and misleading descriptions and representations on or in connection with the manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or sale of

Counterfeit Products with the intent to cause confusion, to cause mistake and to deceive the purchasing public into believing, in error, that Defendants' substandard Counterfeit Products are Shrinky Dinks Products or related products, and/or that Defendants' Counterfeit Products are authorized, sponsored, approved, endorsed or licensed by Plaintiff and/or that Defendants are affiliated, connected or associated with Plaintiff, thereby creating a likelihood of confusion by consumers as to the source of such Counterfeit Products, and allowing Defendants to capitalize on the goodwill associated with, and the consumer recognition of, the Shrinky Dinks Mark, to Defendants' substantial profit in blatant disregard of Plaintiff's rights.

70.     By manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in the Counterfeit Products that are identical to, confusingly similar to or which constitute colorable imitations of Plaintiff's Shrinky Dinks Products using marks that are identical and/or confusingly similar to, or which constitute colorable imitations of the Shrinky Dinks Mark, Defendants have traded off the extensive goodwill of Plaintiff and its Shrinky Dinks Products and did in fact induce, and intend to, and will continue to induce customers to purchase Defendants' Counterfeit Products, thereby directly and unfairly competing with Plaintiff.  Such conduct has permitted and will continue to permit Defendants to make substantial sales and profits based on the goodwill and reputation of Plaintiff and its Shrinky Dinks Mark, which Plaintiff has amassed through its nationwide marketing, advertising, sales and consumer recognition.

71.     Defendants knew, or by the exercise of reasonable care should have known, that their adoption and commencement of and continuing use in commerce of marks that are identical or confusingly similar to and constitute reproductions of the Shrinky Dinks Mark would cause confusion, mistake or deception among purchasers, users and the public.

72.     Upon information and belief, Defendants' aforementioned wrongful actions have been knowing, deliberate, willful, intended to cause confusion, to cause mistake and to deceive the purchasing public and with the intent to trade on the goodwill and reputation Plaintiff, its Shrinky Dinks Products and Shrinky Dinks Mark.

73.     As a direct and proximate result of Defendants' aforementioned actions, Defendants have caused irreparable injury to Plaintiff by depriving Plaintiff of sales of its Shrinky Dinks Products and by depriving Plaintiff of the value of its Shrinky Dinks Mark as commercial assets in an amount as yet unknown, but to be determined at trial, for which it has no adequate remedy at law, and unless immediately restrained, Defendants will continue to cause substantial and irreparable injury to Plaintiff and the goodwill and reputation associated with the value of the Shrinky Dinks Mark.

74.     Based on Defendants' wrongful conduct, Plaintiff is entitled to injunctive relief as well as monetary damages and other remedies as provided by the Lanham Act, including damages that Plaintiff has sustained and will sustain as a result of Defendants' illegal and infringing actions as alleged herein, and all gains, profits and advantages obtained by Defendants as a result thereof, enhanced discretionary damages and reasonable attorneys' fees and costs.

### FOURTH CAUSE OF ACTION
### (Unfair Competition)
### [New York Common Law]

75.      Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

76.      By manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in the Counterfeit Products, Defendants have traded off the extensive goodwill of Plaintiff and its Shrinky Dinks

Products to induce, and did induce and intend and will continue to induce, customers to purchase their Counterfeit Products, thereby directly competing with Plaintiff. Such conduct has permitted and will continue to permit Defendants to make substantial sales and profits based on the goodwill and reputation of Plaintiff, which Plaintiff has amassed through its nationwide marketing, advertising, sales and consumer recognition.

77.     Defendants' advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in the Counterfeit Products was and is in violation and derogation of Plaintiff's rights and is likely to cause confusion and mistake, and to deceive consumers and the public as to the source, origin, sponsorship or quality of Defendants' Counterfeit Products.

78.     Defendants knew, or by the exercise of reasonable care should have known, that their advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in the Counterfeit Products and their continuing advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in the Counterfeit Products would cause confusion and mistake, or deceive purchasers, users and the public.

79.     Upon information and belief, Defendants' aforementioned wrongful actions have been knowing, deliberate, willful, intended to cause confusion and mistake, and to deceive, in blatant disregard of Plaintiff's rights, and for the wrongful purpose of injuring Plaintiff, and its competitive position while benefiting Defendants.

80.     As a direct and proximate result of Defendants' aforementioned wrongful actions, Plaintiff has been and will continue to be deprived of substantial sales of its Shrinky Dinks Products in an amount as yet unknown but to be determined at trial, for which Plaintiff has no adequate

remedy at law, and Plaintiff has been and will continue to be deprived of the value of its Shrinky Dinks Mark as commercial assets in an amount as yet unknown but to be determined at trial, for which Plaintiff has no adequate remedy at law.

81.     As a result of Defendants' actions alleged herein, Plaintiff is entitled to injunctive relief, an order granting Plaintiff's damages and Defendants' profits stemming from their infringing activities, and exemplary or punitive damages for Defendants' intentional misconduct.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment against Defendants, inclusive, and each of them, as follows:

A.     For an award of Defendants' profits and Plaintiff's damages pursuant to 15 U.S.C. § 1117(a), enhanced discretionary damages under 15 U.S.C. § 1117(a)(3) and treble damages in the amount of a sum equal to three (3) times such profits or damages, whichever is greater, pursuant to 15 U.S.C. § 1117(b) for willfully and intentionally using a mark or designation, knowing such mark or designation is a counterfeit mark in violation of 15 U.S.C. § 1114(1)(a);

B.     In the alternative to Defendants' profits and Plaintiff's actual damages, enhanced discretionary damages and treble damages for willful use of a counterfeit mark in connection with the sale, offering for sale or distribution of goods or services, for statutory damages pursuant to 15 U.S.C. § 1117(c)  in the amount of not more than $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale or distributed, as the Court considers just, which Plaintiff may elect prior to the rendering of final judgment;

C.     For an award of Defendants' profits and Plaintiff's damages in an amount to be proven at trial for willful trademark infringement of Plaintiff's federally registered Shrinky

Dinks Mark, and such other compensatory damages as the Court determines to be fair and appropriate pursuant to 15 U.S.C. § 1117(a);

D.      For an award of Defendants' profits and Plaintiff's damages pursuant to 15 U.S.C. § 1117(a) in an amount to be proven at trial and such other compensatory damages as the Court determines to be fair and appropriate pursuant to 15 U.S.C. § 1117(a) for false designation of origin and unfair competition under 15 U.S.C. §1125(a);

E.      For an award of damages to be proven at trial for common law unfair competition;

F.      For a preliminary and permanent injunction by this Court enjoining and prohibiting Defendants, or their agents, and any employees, agents, servants, officers, representatives, directors, attorneys, successors, affiliates, assigns and entities owned or controlled by Defendants, and all those in active concert or participation with Defendants, and each of them who receives notice directly or otherwise of such injunction from:

      i.   manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in the Counterfeit Products;

      ii.  directly or indirectly infringing in any manner Plaintiff's Shrinky Dinks Mark;

      iii. using any reproduction, counterfeit, copy or colorable imitation of Plaintiff's Shrinky Dinks Mark to identify any goods or services not authorized by Plaintiff;

      iv.  using Plaintiff's Shrinky Dinks Mark or any other marks that are confusingly similar to the Shrinky Dinks Mark, on or in connection with Defendants' manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in

the Counterfeit Products;

v.   using any false designation of origin or false description, or engaging in any action which is likely to cause confusion, cause mistake and/or to deceive members of the trade and/or the public as to the affiliation, connection or association of any product manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale or sold by Defendants with Plaintiff, and/or as to the origin, sponsorship or approval of any product manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale or sold by Defendants and Defendants' commercial activities by Plaintiff;

vi.   engaging in the unlawful, unfair or fraudulent business acts or practices, including, without limitation, the actions described herein, including the of advertising and/or dealing in any Counterfeit Products;

vii.   engaging in any other actions that constitute unfair competition with Plaintiff;

viii.   engaging in any other act in derogation of Plaintiff's rights;

ix.   from secreting, concealing, destroying, altering, selling off, transferring or otherwise disposing of and/or dealing with: (i) Counterfeit Products; (ii) any computer files, data, business records, documents or any other records or evidence relating to Defendants' User Accounts or Merchant Storefronts, Defendants' Assets from or to Defendants' Financial Accounts and the manufacture, importation, exportation, advertising, marketing, promotion, distribution, display, offering for sale and/or sale of Counterfeit Products;

x.   from secreting, concealing, transferring, disposing of, withdrawing,

24

encumbering or paying any of Defendants' Assets from or Defendants' Financial Accounts until further ordered by this Court;

xi.   effecting assignments or transfers, forming new entities or associations, or utilizing any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth in any final judgment or order in this action;

xii.  providing services to Defendants, Defendants' User Accounts and Defendants' Merchant Storefronts, including, without limitation, continued operation of Defendants' User Accounts and Merchant Storefronts; and

xiii. instructing any other person or entity to engage or perform any of the activities referred to in subparagraphs (i) through (xii) above; and

G.    For an order of the Court requiring that Defendants recall from any distributors and retailers and deliver up to Plaintiff for destruction any and all Counterfeit Products and any and all packaging, labels, tags, advertising and promotional materials and any other materials in the possession, custody or control of such distributors and retailers that infringe Plaintiff's Shrinky Dinks Mark, or bear any marks that are confusingly similar to the Shrinky Dinks Mark;

H.    For an order of the Court requiring that Defendants deliver up for destruction to Plaintiff any and all Counterfeit Products and any and all packaging, labels, tags, advertising and promotional materials and any other materials in the possession, custody or control of Defendants that infringe Plaintiff's Shrinky Dinks Mark, or bear any marks that are confusingly similar to the Shrinky Dinks Mark pursuant to 15 U.S.C. § 1118;

I.    For an order from the Court requiring that Defendants provide complete accountings for any and all monies, profits, gains and advantages derived by Defendants from their

manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, sale and/or otherwise dealing in the Counterfeit Products as described herein, including prejudgment interest;

J.      For an order from the Court that an asset freeze or constructive trust be imposed over any and all monies, profits, gains and advantages in Defendants' possession which rightfully belong to Plaintiff;

K.      For an award of exemplary or punitive damages in an amount to be determined by the Court;

L.      For Plaintiff's reasonable attorneys' fees;

M.      For all costs of suit; and

N.      For such other and further relief as the Court may deem just and equitable.

## **DEMAND FOR JURY TRIAL**

Plaintiff respectfully demands a trial by jury on all claims.

Dated: February 19, 2021                     Respectfully submitted,

                                             EPSTEIN DRANGEL LLP

                                             BY:   _____
                                                   Jason M. Drangel (JD 7204)
                                                   jdrangel@ipcounselors.com
                                                   Ashly E. Sands (AS 7715)
                                                   asands@ipcounselors.com
                                                   Brieanne Scully (BS 3711)
                                                   bscully@ipcounselors.com
                                                   Danielle S. Yamali (DY 4228)
                                                   dfutterman@ipcounselors.com
                                                   60 East 42nd Street, Suite 2520
                                                   New York, NY 10165
                                                   Telephone:      (212) 292-5390

Facsimile:       (212) 292-5391
*Attorneys for Plaintiff*
*Just Play, LLC*

# EXHIBIT A













# EXHIBIT B

Int. Cl.: 28

Prior U.S. Cl.: 22

## United States Patent Office

Reg. No. 1,042,382
Registered June 29, 1976

## TRADEMARK
Principal Register

# SHRINKY DINKS

K & B Innovations, Inc. (Wisconsin corporation)
17720 Redvere Drive
Brookfield, Wis.   53005

For: HOBBY CRAFT KITS, AND REFILL PACKS THEREFOR, COMPRISING SHEETS OF THIN PLASTIC MATERIAL THAT CAN BE COLORED AND/OR CUT OUT AND THEN HEATED TO CAUSE THE SAME TO SHRINK AND FORM THICKENED AND HARDENED ART FORMS, in CLASS 28 (U.S. CL. 22).
First use Oct. 22, 1973; in commerce Oct. 26, 1973.

Ser. No. 32,119, filed Sept. 16, 1974.



**United States Patent and Trademark Office**

Home | Site Index | Search | Guides | Contacts | eBusiness | eBiz alerts | News | Help



Assignments on the Web > **Trademark Query**

# Trademark Assignment Abstract of Title

**Total Assignments: 9**

| | | | |
|---|---|---|---|
| **Serial #:** 73032119 | **Filing Dt:** 09/16/1974 | **Reg #:** 1042382 | **Reg. Dt:** 06/29/1976 |
| **Registrant:** K & B INNOVATIONS, INC. | | | |
| **Mark:** SHRINKY DINKS | | | |

## Assignment: 1

| | | |
|---|---|---|
| **Reel/Frame:** 5576/0621 | **Recorded:** 07/15/2015 | **Pages:** 6 |

**Conveyance:** NOTICE OF GRANT OF SECURITY INTEREST IN TRADEMARKS

**Assignor:** SHRINKY DINKS HOLDINGS, LLC
**Exec Dt:** 06/30/2014
**Entity Type:** LIMITED LIABILITY COMPANY
**Citizenship:** DELAWARE

**Assignee:** BANK OF AMERICA, N.A., AS ADMINISTRATIVE AGENT
901 MAIN STREET
MAIL CODE: TX1-492-14-06
DALLAS, TEXAS 75202
**Entity Type:** NATIONAL BANKING ASSOCIATION
**Citizenship:** UNITED STATES

**Correspondent:** MOORE & VAN ALLEN PLLC
3015 CARRINGTON MILL BOULEVARD
SUITE 400
MORRISVILLE, NC 27560

## Assignment: 2

| | | |
|---|---|---|
| **Reel/Frame:** 5433/0237 | **Recorded:** 12/31/2014 | **Pages:** 6 |

**Conveyance:** ASSIGNS THE ENTIRE INTEREST

**Assignor:** K & B INNOVATIONS, INC.
**Exec Dt:** 12/17/2014
**Entity Type:** CORPORATION
**Citizenship:** WISCONSIN

**Assignee:** SHRINKY DINKS HOLDINGS, LLC
10 GLENVILLE STREET, 1ST FLOOR
C/O PROPEL EQUITY PARTNERS
GREENWICH, CONNECTICUT 06831
**Entity Type:** LIMITED LIABILITY COMPANY
**Citizenship:** DELAWARE

**Correspondent:** KENNETH R. SCHACTER
101 PARK AVENUE, 28TH FLOOR
NEW YORK, NY 10178

## Assignment: 3

| | | |
|---|---|---|
| **Reel/Frame:** 5513/0424 | **Recorded:** 05/11/2015 | **Pages:** 5 |

**Conveyance:** SECURITY INTEREST

**Assignor:** SHRINKY DINKS HOLDINGS, LLC
**Exec Dt:** 05/08/2015
**Entity Type:** LIMITED LIABILITY COMPANY
**Citizenship:** DELAWARE

**Assignee:** THL CORPORATE FINANCE, INC., AS ADMINISTRATIVE AGENT
100 FEDERAL STREET, 31ST FLOOR
BOSTON, MASSACHUSETTS 02110
**Entity Type:** CORPORATION
**Citizenship:** DELAWARE

**Correspondent:** CHRISTINE SLATTERY
PROSKAUER ROSE LLP
ONE INTERNATIONAL PLACE
BOSTON, MA 02110

## Assignment: 4

| | | |
|---|---|---|
| **Reel/Frame:** 6091/0948 | **Recorded:** 06/27/2017 | **Pages:** 5 |

**Conveyance:** TERMINATION AND RELEASE OF SECURITY INTEREST IN TRADEMARKS (PREVIOUSLY RECORDED 7/15/15 AT REEL/FRAME 5576/0621)

**Assignor:** BANK OF AMERICA, N.A., AS ADMINISTRATIVE AGENT
**Exec Dt:** 06/26/2017
**Entity Type:** NATIONAL BANKING ASSOCIATION
**Citizenship:** UNITED STATES

**Assignee:** SHRINKY DINKS HOLDINGS, LLC
10 GLENVILLE STREET
GREENWICH, CONNECTICUT 06831
**Entity Type:** LIMITED LIABILITY COMPANY
**Citizenship:** DELAWARE

**Correspondent:** MOORE & VAN ALLEN PLLC
3015 CARRINGTON MILL BOULEVARD
SUITE 400
MORRISVILLE, NC 27560

## Assignment: 5

| | | |
|---|---|---|
| **Reel/Frame:** 6103/0732 | **Recorded:** 07/12/2017 | **Pages:** 10 |

**Conveyance:** SECURITY AGREEMENT

**Assignor:** SHRINKY DINKS HOLDINGS, LLC
**Exec Dt:** 06/26/2017
**Entity Type:** LIMITED LIABILITY COMPANY
**Citizenship:** DELAWARE

**Assignee:** BANK OF AMERICA, N.A.
ONE BRYANT PARK
NEW YORK, NEW YORK 10036
**Entity Type:** ASSOCIATION
**Citizenship:** UNITED STATES

**Correspondent:** JAMES MURRAY
4400 EASTON COMMONS WAY, SUITE 125
CT CORPORATION

COLUMBUS, OH 43219

**Assignment: 6**

**Reel/Frame:** 6480/0589

**Recorded:** 11/13/2018

**Pages:** 6

**Conveyance:** SECURITY INTEREST

**Assignor:** SHRINKY DINKS HOLDINGS, LLC

**Exec Dt:** 07/27/2018
**Entity Type:** LIMITED LIABILITY COMPANY
**Citizenship:** DELAWARE

**Assignees:** PINEBRIDGE STRUCTURED CAPITAL PARTNERS III, L.P.
399 PARK AVENUE
4TH FLOOR
NEW YORK, NEW YORK 10022

**Entity Type:** LIMITED PARTNERSHIP
**Citizenship:** DELAWARE

PINEBRIDGE STRUCTURED CAPITAL PARTNERS OFFSHORE III-A, L.P.
399 PARK AVENUE
4TH FLOOR
NEW YORK, NEW YORK 10022

**Entity Type:** LIMITED PARTNERSHIP
**Citizenship:** CAYMAN ISLANDS

**Correspondent:** PROSKAUER ROSE LLP
2029 CENTURY PARK EAST, SUITE 2400
C/O KIMBERLY A. LATHROP
LOS ANGELES, CA 90067

**Assignment: 7**

**Reel/Frame:** 6527/0861

**Recorded:** 01/17/2019

**Pages:** 123

**Conveyance:** ASSIGNMENT OF SECURITY INTERESTS

**Assignors:** THL CREDIT, INC.

**Exec Dt:** 01/11/2019
**Entity Type:** CORPORATION
**Citizenship:** DELAWARE

THL CREDIT GREENWAY FUND II LLC

**Exec Dt:** 01/11/2019
**Entity Type:** CORPORATION
**Citizenship:** DELAWARE

THL CORPORATE FINANCE, INC.

**Exec Dt:** 01/11/2019
**Entity Type:** CORPORATION
**Citizenship:** DELAWARE

**Assignee:** GLENN J KREVLIN REVOCABLE TRUST DATED JULY 25, 2007
**Composed of:**

- KREVLIN, GLENN J, UNITED STATES, INDIVIDUAL

1185 PARK AVENUE, APT 12D
NEW YORK, NEW YORK 10128

**Entity Type:** TRUST
**Citizenship:** NEW YORK

**Correspondent:** ATUL R. SINGH
1345 AVENUE OF THE AMERICAS, 11TH FLOOR
ELLENOFF GROSSMAN & SCHOLE LLP
NEW YORK, NY 10105

**Assignment: 8**

**Reel/Frame:** 6849/0182

**Recorded:** 01/28/2020

**Pages:** 7

**Conveyance:** SECURITY INTEREST

**Assignors:** PINEBRIDGE STRUCTURED CAPITAL PARTNERS III, L.P.

**Exec Dt:** 01/28/2020
**Entity Type:** LIMITED PARTNERSHIP
**Citizenship:** DELAWARE

PINEBRIDGE STRUCTURED CAPITAL PARTNERS OFFSHORE III-A, L.P.

**Exec Dt:** 01/28/2020
**Entity Type:** LIMITED PARTNERSHIP
**Citizenship:** CAYMAN ISLANDS

**Assignees:** LUCKY GOLDEN TOY FINANCE I, LLC
200 BELLEVUE PARKWAY, SUITE 210
C/O INTERTRUST CORPORATE SERVICES DELAWARE LTD.
WILMINGTON, DELAWARE 19809

**Entity Type:** LIMITED LIABILITY COMPANY
**Citizenship:** DELAWARE

LUCKY GOLDEN TOY FINANCE II, LLC
200 BELLEVUE PARKWAY, SUITE 210
C/O INTERTRUST CORPORATE SERVICES DELAWARE LTD.
WILMINGTON, DELAWARE 19809

**Entity Type:** LIMITED LIABILITY COMPANY
**Citizenship:** DELAWARE

**Correspondent:** PROSKAUER ROSE LLP
2029 CENTURY PARK EAST, SUITE 2400
C/O KIMBERLY A. LATHROP
LOS ANGELES, CA 90067

**Assignment: 9**

**Reel/Frame:** 6977/0174

**Recorded:** 06/15/2020

**Pages:** 37

**Conveyance:** MEMORANDUM OF SALE

**Assignors:** POOF-SLINKY, LLC

**Exec Dt:** 05/13/2020
**Entity Type:** LIMITED LIABILITY COMPANY
**Citizenship:** MICHIGAN

POOF-SLINKY FUNDEX LLC

**Exec Dt:** 05/13/2020
**Entity Type:** LIMITED LIABILITY COMPANY
**Citizenship:** DELAWARE

ALEX TOYS, LLC

**Exec Dt:** 05/13/2020
**Entity Type:** LIMITED LIABILITY COMPANY
**Citizenship:** DELAWARE

POOF-SUMMIT HOLDINGS, LLC

**Exec Dt:** 05/13/2020
**Entity Type:** LIMITED LIABILITY COMPANY
**Citizenship:** DELAWARE

CITIBLOCS HOLDINGS LLC

**Exec Dt:** 05/13/2020
**Entity Type:** LIMITED LIABILITY COMPANY
**Citizenship:** DELAWARE

ZOOB CORPORATION

**Exec Dt:** 05/13/2020
**Entity Type:** CORPORATION
**Citizenship:** DELAWARE

SHRINKY DINKS HOLDINGS, LLC

**Exec Dt:** 05/13/2020
**Entity Type:** LIMITED LIABILITY COMPANY
**Citizenship:** DELAWARE

GK TOYS LLC

**Exec Dt:** 05/13/2020
**Entity Type:** LIMITED LIABILITY COMPANY
**Citizenship:** DELAWARE

**Assignee:** JUST PLAY , LLC
4850 T-REX AVENUE, SUITE 100
BOCA RATON, FLORIDA 33431

**Entity Type:** LIMITED LIABILITY COMPANY
**Citizenship:** DELAWARE

**Correspondent:** NORM J. RICH
FOLEY & LARDNER LLP
3000 K STREET, N.W. SUITE 600
WASHINGTON, DC 20007-5109

Search Results as of: 01/20/2021 10:24 AM

If you have any comments or questions concerning the data displayed, contact PRD / Assignments at 571-272-3350. v.2.6
Web interface last modified: August 25, 2017 v.2.6

| **HOME** | **INDEX** | **SEARCH** | **eBUSINESS** | **CONTACT US** | **PRIVACY STATEMENT**